UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

    NANCY C. EHMKE,

                  Debtor.

------------------------------------------------------------X

JOSEPH COHEN,

                  Appellant,

    v.

NANCY C. EHMKE,

                  Appellee.

------------------------------------------------------------X

Case No. CV-06-0598 (BMC)

(Chapter 11 Case No. 05-023039-dem)

**MEMORANDUM DECISION**

Cogan, District Judge.

This is an appeal from an Order of the Bankruptcy Court entered December 14, 2005 that: (a) granted the motion of the Chapter 11 Debtor, Nancy Ehmke, to reject a contract for the sale of real property to the Appellant, Joseph Cohen; and (b) denied Cohen's motion to lift the automatic stay so he could proceed to a closing of the sale. The question posed by this appeal is whether §365(a) of the Bankruptcy Code is available to the Debtor to reject the contract of sale. I hold that it is and therefore affirm the Order of the Bankruptcy Court.

# FACTUAL BACKGROUND

Prior to the events surrounding this case, the property at 81-20 Kent Street, Jamaica Estates, New York (the "Premises) had been the residence of the Debtor, her parents, Hazel Goldacker Ehmke and Neil Ehmke, and her grandparents, the Goldackers, since the Goldackers bought the Premises in 1932. On April 4, 1995, the Debtor was deemed an incapacitated person under New York's Mental Hygiene Law. Over the next nine years, the Debtor accordingly had four consecutive court-appointed Guardians, the third of which was Edward J. Chesnik, to manage her affairs. These guardianships continued through November 4, 2004.

The Debtor's mother, Hazel Goldacker Ehmke, died in a fire on the Premises on or about March 2, 2002, during the period of the Debtor's incapacity. The house was either destroyed or at least severely damaged. Hazel left a Will that appointed the Debtor and the Debtor's father as co-executors, but because the Debtor's father had already died, the Debtor stood to become the sole executor. The Debtor was also the sole beneficiary of her mother's estate. However, in light of the Debtor's legal incapacity to serve as Executor, Chesnik was appointed Administrator *cum testamento annexo* of the estate of Hazel Goldacker Ehmke.

Beginning no later than late 2002, the Debtor and her husband brought proceedings to terminate her guardianship. On April 1, 2003, the Queens County Supreme Court declined to end the guardianship, but replaced Chesnik with a new guardian for the Debtor, finding that Chesnik "failed to visit the incapacitated person four (4) times per year and failed to marshal the assets as required under the Order of Appointment." However, Chesnik's authority as Administrator C.T.A. was through the

2

Queens Surrogates Court, not the Supreme Court, and he therefore remained as Administrator C.T.A.

On June 16, 2003, in his continuing capacity as Administrator C.T.A., Chesnik entered into a contract to sell the Premises to Cohen (the "Contract"). The Queens County Surrogate approved the Contract on September 29, 2003. The Debtor did not appear in connection with this application except through a Guardian Ad Litem appointed specially by the Surrogate for that proceeding named Scott Gary Kaufman. The Surrogate may have appointed Kaufman because the Supreme Court did not appoint Chesnik's successor as Guardian, Zenith T. Taylor, until December 24, 2003. In any event, both Kaufman and later, in the Bankruptcy Court, Taylor, supported the sale to Cohen.

In response to the Surrogate's Order approving the Contract, the Debtor filed several bankruptcy cases in an effort to stop the sale to Cohen, even though she was under Guardianship proceedings and thus legally disabled from filing bankruptcy except through her Guardian. She filed her first Chapter 13 petition on December 18, 2003; that was dismissed for lack of standing (i.e., only the Guardian could file) on March 10, 2004.

After that dismissal, the Debtor again sought to terminate her guardianship, bringing proceedings in the Supreme Court in March of 2004. This was finally granted by the Supreme Court on November 4, 2004. Ten days later, on November 14, 2004, the Debtor sought to remove Chesnik as Administrator C.T.A. of her mother's estate. The Queens Surrogate granted this motion on January 7, 2005, and the Debtor became Successor Executor.

Just before the termination of her guardianship, on October 25, 2004, the Debtor filed her second Chapter 13 petition. The Bankruptcy Court dismissed it on January 18,

2005. The Record is not clear why, but suggests, according to the Debtor, that it related, like the dismissal of her first petition, to her legal incapacity, which existed on the filing date, but not the dismissal date, of this second petition.

Appellant Cohen, the would-be purchaser, was not idle while all of this was happening. In 2005, he obtained an Order from the Surrogates Court directing the Debtor to specifically perform the Contract. The Debtor was heard in opposition to this motion but the Surrogate overruled her objection. The Surrogate granted relief to Cohen in a Decree and Order Directing Specific Performance on July 15, 2005 (the "Decree"). In its decision to award the Decree, the Surrogate held:

> The Respondent [i.e., the Debtor] does not claim that [Chesnik] lacked authority to enter into the contract of sale, or that the purchase price is insufficient. Nor does Respondent claim that Petitioner [Cohen] is unable to close. The gravamen of Respondent's objection is that it would be inequitable for the Court to direct her to sell the house, which has been in her family for approximately seventy years.
>
> ...[T]he house was largely destroyed and has been vacant for more than three years. The proceeds of the insurance settlement were used to stop the loss of the property in foreclosure. As a result, the estate was able to negotiate a sale price in the amount of $850,000, which is approximately $200,000 over its appraised value.
>
> There is no indication that Petitioner has not acted in good faith.

The Decree ordered the Debtor to close title within 30 days.

## PROCEEDINGS BELOW

On the 30th day, August 15, 2005, the Debtor filed the instant Chapter 11 case. On November 1, 2005, Cohen filed a motion to lift the automatic stay and allow him to enforce the Decree. The Debtor responded with a motion authorizing her to reject the Contract under §365(a) of the Code. On December 13, 2005, the Bankruptcy Court ruled

4

on the Record, granting the Debtor's motion to reject the Contract and denying Cohen's lift stay motion. The Bankruptcy Court held that

> this is an executory contract where the movant is seeking to compel performance, and as counsel for the debtor has established, it is not in the best interests of the estate to complete performance of that contract.
>
> The Court rejects the argument of counsel for Cohen that the Debtor lacks standing to bring this motion because she is not a party to the contract. The fact that counsel for Cohen has brought an action for specific performance [against the Debtor] ... indicates sufficiently to this Court that even in its view the debtor is a party whose performance is essential under the contract, and as sole beneficiary of the estate, sole holder of an equitable interest in the decedent's estate, is a party to the contract.

The Bankruptcy Court entered a minute order on the docket confirming this ruling on December 14, 2005. This appeal followed.

## DISCUSSION

Appellant Cohen raises two points on this appeal: (1) under §365(a) of the Code, the Debtor could not reject the contract because it was a contract between her mother's estate, not the Debtor, and Cohen, and thus not a contract "of the debtor"; and (2) the *Rooker-Feldman* doctrine prevented the Bankruptcy Court from entering an Order rejecting the Contract because this Order effectively invalidated the State Court Decree.[1] Cohen also challenges the denial of his lift stay motion, but recognizes that that motion cannot be granted if the Bankruptcy Court properly ordered rejection under §365(a).

A. Is this a Contract "of the Debtor"?

Section 365(a) of the Code provides that a bankruptcy trustee or debtor-in-possession "may assume or reject any executory contract ... of the debtor." Cohen

---

[1] For the first time, Cohen raises in his reply brief the argument that the Contract was not "executory" under §365(a). Since this argument was not raised below, it may not be raised on appeal. See, e.g., In re Blackwood Associates L.P., 153 F.3d 61, 67 (2d Cir. 1998); DeNadai v. Preferred Capital Markets, Inc., 272 B.R. 21, 33 n.10 (D. Mass. 2001).

5

argues that the Contract is not "of" the Debtor but, rather, "of" her mother's estate, i.e., between her mother's estate and Cohen. According to Cohen, the fact that the Debtor serves as Successor Executor of her mother's estate and is the sole beneficiary of that estate does not make the Contract one that is "of the debtor." Although there is no authority construing this phrase, Cohen points out that cases applying §365(a) are all in situations where the debtor is both the signatory to the contract in its individual capacity, not as a fiduciary, and is also the obligor under that contract.

The Debtor responds, among other things, that under §541(a)(1) of the Code, the Debtor's estate is composed of all "legal or equitable interests of the debtor in property," and because the Debtor has 100% of the equitable interest in the Premises, the Contract is "of the Debtor." This comes close to the mark, but misses it slightly. The Debtor's equitable interest in the Premises or the proceeds of its sale is unquestionably property of the Debtor's estate. However, this does not necessarily mean that a contract affecting the Debtor's interest in the Premises is a contract "of the Debtor" for purposes of §365(a).

There is some attraction to Cohen's position. The Code clearly does not contemplate the broad movement of disputes involving executors, beneficiaries and vendees of the assets of decedents' estates over state-court approved contracts into bankruptcy court. In addition, an expansive interpretation of the phrase "of the debtor" might be inappropriately used by any third party beneficiary to seek assumption or rejection of a contract to which he was not a direct party.

The difference here, however, is that at the time she was seeking relief under §365(a), the Debtor was both the Executor and the sole beneficiary. The question thus is whether the Contract is "hers."

6

Under these unusual facts, I conclude that this Contract is one that is "of the debtor." There is nothing in the language itself or the case law to suggest that the phrase "of the debtor" is limited to those typical situations in which the debtor has signed a contract pre-petition, obligating itself to perform, and then seeks to terminate it post-petition. A more reasonable reading of the phrase would include a contract in which the debtor, as one counterparty, has (1) the sole legal obligation to perform; (2) the sole ability to perform; and (3) the sole beneficial interest in the contract's performance or non-performance. If those conditions are met, then it is hard to see how the contract is not "of the debtor." Cf. In re Bunch, 249 B.R. 667, 671 (Bankr. D.Md. 2000) ("The filing of a bankruptcy petition by a debtor as trustee or other fiduciary does not bring the assets of the trust or other fiduciary estate within the jurisdiction of the bankruptcy court. However, the result may be different when the debtor is both fiduciary and beneficiary of the fiduciary estate.")

The Debtor is hardly a stranger to or an incidental beneficiary of this Contract. As both Successor Executor and 100% beneficial owner of the Premises, the Debtor is effectively her own agent. Her mother's estate, the nominal party to the Contract, is a mere pass-through entity, not even juridically recognized for purposes of filing bankruptcy. See In re Goerg, 844 F.2d 1562, 1565-66 (11th Cir. 1988). There is no one with any interest in or ability to close or not close this Contract on the seller's side except the Debtor.

Accordingly, I hold that the Contract is a contract of the debtor as that phrase is used in §365(a).

B. Does the *Rooker-Feldman* Doctrine Preclude Relief?

7

In Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Supreme Court held that its jurisdiction to review final state court judgments under 28 U.S.C. §1257 was exclusive, and lower federal courts cannot enter rulings that effectively constitute appellate review of a State Court judgment. The Court has recently recognized that the reach of *Rooker-Feldman* is limited, and will rarely constitute a basis for declining to apply federal law when such law is applicable. See Lance v. Dennis, 126 S.Ct. 1198, 1201 (2006) ("our cases since Feldman have tended to emphasize the narrowness of the *Rooker-Feldman* rule"). At least one Supreme Court Justice has suggested that Rooker-Feldman has been all but overruled. Marshall v. Marshall, 126 S.Ct. 1735, 1752 (2006) (Stevens, J., concurring) ("I would provide the creature with a decent burial adjacent to the resting place of the *Rooker-Feldman* doctrine.")

*Rooker-Feldman* has never had much impact in bankruptcy cases. Congress' power under Article I of the Constitution to enact uniform bankruptcy laws such as the Bankruptcy Code necessarily means that state court judgments will be treated differently, with less or even no effect, then they would be treated in state court. This is not regarded as "second-guessing" the merits decided by the state court, which is all that *Rooker-Feldman* seeks to prevent. It is merely a necessary incident of enforcing the provisions of the Bankruptcy Code. As the Ninth Circuit recently recognized in In re Sasson, 424 F.3d 864, 871 (9th Cir. 2005):

> Application of the *Rooker-Feldman* doctrine in bankruptcy is limited by the separate jurisdictional statutes that govern federal bankruptcy law. The *Rooker-Feldman* doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or

8

that, by their nature, could arise only in the context of a federal bankruptcy case. In the exercise of federal bankruptcy power, bankruptcy courts may avoid state judgments in core bankruptcy proceedings, *see, e.g.,* 11 U.S.C. §§ 544, 547, 548, 549, may modify judgments, *see, e.g.,* 11 U.S.C. §§ 1129, 1325, and, of primary importance in this context, may discharge them, *see, e.g.,* 11 U.S.C. §§ 727, 1141, 1328.

(citations omitted).

There is nothing in this case that implicates *Rooker-Feldman*. The Debtor is not challenging the State Court Decree. She is not asking the Bankruptcy Court to revisit the merits of her prior challenge to specific performance. She is not claiming any error or impropriety in the entry of the Decree. The state court defenses she raised in state court before entry of the Decree are immaterial to her §365(a) motion. She acknowledges that she is bound under state law to perform the Contract and her rejection of the Contract under §365(a) constitutes a court-sanctioned breach, for which Cohen's remedy, if any, is in the Chapter 11 case. See In re Lavigne, 114 F.3d 379, 386-87 (2d Cir. 1997). In fact, it is the validity of the State Court Decree, upholding the Contract, that serves as the predicate for her §365(a) motion.[2]

Since a Bankruptcy Court can avoid state court judgments; or modify them; or trigger the ultimate weapon of discharging them without offending *Rooker-Feldman*, it seems clear that it can grant a §365(a) motion to reject a contract without contravening *Rooker-Feldman*.

---

[2] For the same reason, Cohen's attempt to invoke *res judicata* or collateral estoppel is misplaced. Section 365(a) does not question the collateral impact of a state court judgment. There is no relitigation of the issues that the state court determined.

9

## CONCLUSION

The Bankruptcy Court's Order is AFFIRMED. The Clerk is directed to enter Judgment.

Dated: Brooklyn, New York
      July 13, 2006

                                /s/(BMC)
                                  U.S.D.J.